<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **ALEXANDER LOPEZ-ARENAS,** | : | |
| | : | **Civil Action No. 10-2668 (ES)** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CHIEF C. KENNETH ZISA, et al.,** | : | <u>**OPINION**</u> |
| | : | |
| **Defendants.** | : | |

<u>S</u>ALAS, <u>D</u>ISTRICT <u>J</u>UDGE

Pending before this Court is a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendants Deputy Chief Frank Zisa ("Deputy Zisa"), Sergeant Anthony Trezza ("Sgt. Trezza"), and Lieutenant John Heinemann ("Lt. Heinemann").  (D.E. 14-3, Def. Moving Br.). Having considered the parties' submissions, the Court GRANTS Defendants' Motion in part and DENIES it in part, granting Plaintiff leave to amend his complaint, where noted in this Opinion.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

On May 24, 2010, Plaintiff Alexander Lopez-Arenas, a police officer of the Hackensack Police Department ("HPD"), filed various constitutional and statutory claims against Defendants Chief Kenneth Zisa ("Chief Zisa"), Deputy Zisa, Sgt. Trezza, Lt. Heinemann, the City of Hackensack ("Hackensack"), and the HPD (collectively, the "Defendants").  Plaintiff alleges that Defendants violated his First Amendment rights under 42 U.S.C. §§ 1983 and 1985 and discriminated against him on the basis of his military status in violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4311, *et seq.*; the New Jersey Law Against Discrimination ("LAD"), N.J. Stat. § 10:5-1, *et seq.*; and the New

Jersey Soldiers' and Sailors' Civil Relief Act ("SSCRA"), N.J. Stat. § 38:23c-20a and 38A:4-4. (D.E. 8, Am. Compl. ¶¶ 1-3, 41).

Plaintiff alleges that Defendants violated his First Amendment rights when members of the HPD interfered with his right of free expression in voting in various state, municipal, and union elections. (*See*, *e.g.*, *id.* ¶¶ 5-6, 36, 39). At the core of Plaintiff's First Amendment claims are allegations that Chief Zisa, with the assistance of officers in the Department, used his office in an official capacity to control the HPD to meet his own personal goals for financial and political gain. (*Id.* ¶ 6). Specifically, Plaintiff alleges that Chief Zisa used his position as Chief of Police to influence elections for State Assembly, State Senate, the Bergen County Sheriff's Office, County Freeholders, and the Policemen's Benevolent Association Local 9 Chapter ("PBA"). (*Id.*). Chief Zisa and his associates forced members of the HPD to support the Chief's campaigns or face retaliation by demotion, detrimental transfer, and/or withholding promotion. (*Id.* ¶ 8). For example, during the PBA delegate elections, Chief Zisa's "underlings" allegedly watched as Plaintiff cast his ballot and later asked how he voted as an implicit warning that he must support certain candidates or suffer retaliation. (*Id.* ¶ 23). Earlier, Sgt. Trezza had warned Plaintiff that if he "wanted to proceed up the ranks," it was in his best interest to contribute to Chief Zisa's campaigns. (*Id.* ¶ 22). Plaintiff alleges that he suffered retaliation by demotion to a walking post for refusing to support certain candidates as directed by Chief Zisa. (*Id.* ¶¶ 23, 26).

In addition to the § 1983 and § 1985 claims, Plaintiff asserts violations of USERRA, LAD, and SSCRA based upon allegations of discrimination by members of the HPD on the basis of Plaintiff's military status. On two separate occasions between the years 2004 and 2009, Plaintiff served overseas deployments with his National Guard unit. (*Id.* ¶¶ 25-30). Plaintiff claims that, upon his return, the HPD denied him the level of compensation and benefits owed to

him under USERRA.  (*Id.* ¶¶ 27, 33).   Additionally, HPD officials reassigned Plaintiff to walking posts upon his pressing the Department to comply with USERRA regulations.  (*Id.* ¶¶ 26, 27)  At that time, Lt. Heinemann warned Plaintiff, "I wouldn't push the issue.  It may not end up in your favor."  (*Id.* ¶¶ 23-30).  The allegations of discrimination and the factual assertions that form the basis of the USERRA claims also comprise Plaintiff's LAD and SSCRA claims. (*Id.*).

## II.    LEGAL ANALYSIS

### A.    Legal Standard and General Arguments

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).  But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[;] [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1949.

Generally, Defendants argue that Plaintiff failed to plead sufficient factual matter to satisfy the *Twombly* standard on necessary elements for each of Plaintiff's claims.  (Def. Moving Br. at 10).  As to the § 1983 claims, Defendants argue that Plaintiff failed to plead the necessary element of Defendants' "personal involvement" in the First Amendment violations with facts demonstrating Defendants' "knowledge and acquiescence" of the alleged retaliatory acts.  (*Id.* at 12-13).  As to the USERRA claims, Defendants argue that Plaintiff fails to adequately plead that

Defendants were personally involved in taking any adverse, retaliatory employment actions, and failed to allege that the Defendants involved in those actions were "employers" under the statute. (*Id.* at 14-15).   Similarly, Defendants argue that Plaintiff failed to state a claim against Defendants under SSCRA because only the employer holds the power to provide or deny the job benefits protected by the statute.   (*Id.* at 14-15).   Finally, although Defendants concede that supervisory liability could exist under LAD through aiding or abetting the employer's discriminatory acts, Plaintiff failed to plead the necessary element of Defendant's "active and purposeful conduct" in doing so.   (*Id.* at 18).

In opposition, Plaintiff argues that the Amended Complaint contains sufficient factual detail as to the involvement of each of the Defendants to withstand the motion to dismiss.   (D.E. 20, Pl. Opp. Br. at 11).   On the § 1983 claims, Plaintiff states that Chief Zisa and his associates deprived Plaintiff's rights by demoting him to walking posts following his failure to vote for or support certain candidates in state, local, and union elections.   (*Id.* at 11-12).   Plaintiff argues that his USERRA claims should not be dismissed because Plaintiff "had a duty to obey the orders" of each of the Defendants, which is sufficient to establish them as "employers" for purposes of USERRA liability.   (*Id.* at 15-16).   As to the LAD claims, Plaintiff argues that the standard for aiding and abetting liability includes a supervisor's awareness of and subsequent failure to prevent the violation.   (*Id.* at 14).   Plaintiff also argues that employer liability applies to the Defendants under SSCRA based on the absence of language in the statute that would preclude application of "employer" status to the Defendants in this case.   (*Id.* at 17-18).

B.      **Section 1983 Claims**[1]

Defendants argue that a § 1983 claim requires allegations pled with sufficient factual matter to demonstrate each Defendant's personal involvement in the constitutional violations. (Def. Moving Br. at 12-13).  As such, Defendants argue that Plaintiff does not satisfy his burden of alleging personal involvement by the Defendants based on mere assertions of their knowledge of the violations and subsequent failure to act against the retaliation.  (*Id.*).  Under the following analysis, Plaintiff's § 1983 claims against Deputy Zisa and Lt. Heinemann are dismissed without prejudice, and the § 1983 claim against Sgt. Trezza survives.

Section 1983 provides a cause of action when a state actor retaliates against an individual for participating or engaging in conduct protected by the First Amendment.  *Myers v. Cnty. of Somerset*, 515 F. Supp. 2d 492, 500 (D.N.J. 2007) (citing *Bradshaw v. Twp. of Middleton*, 145 F. App'x 763, 766-67 (3d Cir. 2005)).  To state a First Amendment retaliation claim, the plaintiff must allege that (1) the plaintiff's conduct received First Amendment protection because it addressed a matter of public concern, (2) the state actor retaliated against the plaintiff, and (3) the plaintiff's protected conduct was a substantial or motivating factor in the retaliation.  *Id.*  Courts do not recognize § 1983 liability on a theory of *respondeat superior*; instead, a plaintiff is

---

[1] At the outset, the Court notes that the first paragraph in the Amended Complaint cites 42 U.S.C. § 1985.  (Am. Compl. ¶ 1).  However, Plaintiff fails explicitly to allege anywhere else in the Complaint its specific theory of § 1985 liability or the specific parties to whom § 1985 allegedly applies.  (*See generally id.*).  The Court therefore finds that any purported claims under § 1985 fail to meet the pleading requirements of Federal Rule of Civil Procedure 8(a), and are dismissed without prejudice.  *See generally In re Insurance Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555) ("Under Rule 8(a)(2), a complaint need present only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.").  More generally, the Court is troubled by the fact that Plaintiff has not separated the Complaint into separate Counts, and instead, Plaintiff has listed all of his claims against Defendants in an omnibus "Count One."  (*See* Am. Compl. ¶¶ 35-47).  To the extent Plaintiff chooses to amend consistent with this Opinion (and to the extent Defendants move again for dismissal), the Court cautions the Plaintiff as follows: the Court will closely scrutinize any claim that is not broken into a separate count; that does not list the specific elements required to sustain a claim under the count's statutory or other basis; that does not provide facts plausibly supporting each element of the count; that does not state which facts plausibly support each element of each count; and that does not explicitly state which Defendants are implicated by each count.

5

required to allege that the defendant, through defendant's own actions, violated the Constitution. *See Iqbal*, 129 S. Ct. at 1948; *see also Jordan v. Cicchi*, 428 F. App'x 195, 198-99 (3d Cir. 2011) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).  As such, supervisory liability would apply under § 1983 if the state actor "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

In addition, to adequately plead a First Amendment retaliation claim, § 1983 requires that the plaintiff allege that the defendant holds supervisory authority over an employee in order to sustain the action. *See Aiellos v. Zisa (Aiellos II)*, No. 09-3076, 2010 WL 421083, at *3 (D.N.J. Feb. 2, 2010) (holding that defendant's threat of retaliation did not give rise to a cognizable § 1983 claim because defendant was "merely another line officer . . . not a sergeant, lieutenant, captain" with supervisory authority).  Supervisory authority can exist "even if the supervisor has no formal power to discharge the employee if the supervisor's conduct could constructively discharge the employee in connection with disciplinary charges or proceedings initiated by the supervisor." *Aiellos v. Zisa (Aiellos I)*, No. 09-3076, 2009 WL 3424190, at *5 (D.N.J. Oct. 20, 2009) (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 240 (3d Cir. 2006) ("A supervisor who lacks the power to terminate a subordinate's employment may nonetheless abuse his power with respect to that subordinate, and may even constructively discharge the subordinate, provided he (the supervisor) exercises *some* power over the employee.")).  As a result, the Court could only hold Defendants liable for First Amendment retaliation under § 1983 if (1) Defendants were personally involved in the violations and (2) had supervisory authority over the Plaintiff.

Defendants dispute only the second of the three elements of the First Amendment claim: proof of retaliation.  As such, the Court must first determine whether Plaintiff has sufficiently alleged each Defendant's personal involvement, and second, whether each Defendant had supervisory authority over the Plaintiff.

As to personal involvement, Defendants argue, "[Plaintiff] provides no facts in support of [his] claims," and that Plaintiff "does not allege a single fact to link an action or inaction on these defendants' behalf to any alleged constitutional violation."  (Def. Br. at 13 (relying on *In re Tower Air, Inc*., 416 F.3d 229 (3d Cir. 2005))).  Plaintiff argues, "Defendants [Deputy] Zisa, [Lt.] Heinemann and [Sgt.] Trezza were aware that Chief Zisa's policies deprived [Plaintiff] of these rights and they chose to assist Chief Zisa in carrying out these illegal policies," relating to a deprivation of Plaintiff's First Amendment rights.  (Pl. Opp. at 13).  To evaluate the parties' arguments, the Court reviews the allegations in the Amended Complaint as to each Defendant.

### 1.      Deputy Zisa

Plaintiff explicitly references Deputy Zisa three times in his Amended Complaint.  First, Plaintiff mentions Deputy Zisa—in addition to Sgt. Trezza and Lt. Heinemann—generally:

> From the time that he was hired by the Hackensack Police Department, Plaintiff found the department to be operated essentially like a mob.  In order to be treated fairly, Plaintiff and the other police officers had to follow the dictates of Chief Zisa and his associate officers, including his brother, Deputy Chief Frank Zisa, Lt. Heineman[n] and Sgt. Trezza.  If the Chief or one of his "associates" did not like you, you suffered retaliation.  Sgt. Trezza was a very close friend of the Chief's, having grown up with him.  Lt. Heinemann was Chief Zisa's "right-hand man."

(Am. Compl. ¶ 21).  Second, Plaintiff mentions Deputy Zisa in the context of a dating relationship:

> During this time Plaintiff was dating a fellow Hackensack Police Officer. Subsequent to their eventual breakup this female officer began to date Deputy Chief Frank Zisa.  Shortly thereafter, Defendant Frank Zisa did approach Plaintiff

and told him to stay away from this woman.  Plaintiff understood that even the slightest breach of this order would result in retaliation in the workplace.

(*Id.* ¶ 31).  Third, Plaintiff mentions Deputy Zisa as one of three Defendants who stood back when Plaintiff's rights were violated:

> Defendants did take actions with full knowledge of the rights due and owing Plaintiff, consistent with the overall approval of a Chief Zisa led department predicated on intimidation and abuse of power.  Those in line of succession to Defendant C. Kenneth Zisa, including Defendant Frank Zisa, Defendant John Heinemann and Defendant Anthony Trezza knew or should have known that Plaintiff's rights were being violated yet they did nothing to ensure that the law was followed.  They breached their duty.

(*Id.* ¶ 42).  The three allegations against Deputy Zisa fail under *Twombly* because they do not provide sufficient allegations "personally connecting" Deputy Zisa to the alleged constitutional wrongs.  *Campos v. City of Hackensack*, No. 09-3076, 2011 U.S. Dist. LEXIS 33457, at *17 (D.N.J. Mar. 29, 2011) (finding that allegations against Chief Zisa's associate, Captain Padilla, "lack[ed] specificity" and failed to "sufficiently connect Padilla to the alleged wrong" because the allegations failed to demonstrate "how Zisa and Padilla made known their choice for the . . . election," "how it was communicated to Plaintiffs," and "who made threats and what sort of retaliation was threatened").

Paragraph 21—regarding the "mob"-like nature of the HPD—alleges that officers "had to follow the dictates of Chief Zisa and his associate[s]," but Plaintiff fails to specify the content of those dictates.  Additionally, Plaintiff fails to explain which dictates involved Deputy Zisa.  Paragraph 31—regarding Deputy Zisa's statement to "to stay away from this woman"—does not demonstrate a sufficient link between Deputy Zisa, a constitutional wrong, and the threat of retaliation.  Paragraph 42—alleging "Defendant Frank Zisa, Defendant John Heinemann and Defendant Anthony Trezza knew or should have known that Plaintiff's rights were being violated yet they did nothing"—does not sufficiently allege instances of Deputy Zisa's personal direction

8

of the violations of Plaintiff's rights or of Deputy Zisa's "actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207. Plaintiff's allegation that all three officers "knew [but] did nothing," merely sets forth the *Rode* standard without identifying any facts to plausibly support the conclusory allegation. *See Arnold v. New Jersey*, No. 03-3997, 2007 WL 1381757, at *4 (D.N.J. May 9, 2007) (dismissing § 1983 claim where plaintiff alleged only that "Defendants 'allowed such racial profiling practices'" because "[t]here are no other specific factual allegations linking the State Defendants to the alleged constitutional violation"). Because the Court has found that the § 1983 claims against Deputy Zisa did not sufficiently allege his personal involvement, the Court does not address whether Deputy Zisa had supervisory authority over Plaintiff. Accordingly, Plaintiff's § 1983 claims against Deputy Zisa are dismissed without prejudice.

### 2. Sgt. Trezza

The main allegation specifically against Sgt. Trezza relates to electoral contributions:

> Shortly after he joined the department, plaintiff was advised by Defendant Trezza that if he wanted things to work out for him on the job, it was in his best interest to contribute to Chief Zisa's electoral campaigns. If [sic] effect, if he wanted to proceed up the ranks, he needed to contribute. Plaintiff had to contribute cash monies to Defendant Trezza, purportedly to be delivered to the Chief, to avoid incurring the wrath and power of the Chief and those underlings doing his bidding.

(Am. Compl. ¶ 22). This allegation provides the necessary personal connection between Sgt. Trezza and a deprivation of Plaintiff's right to participate freely in electoral campaigns. The statement that "if he wanted things to work out for him on the job, it was in his best interest to contribute to Chief Zisa's electoral campaigns," plausibly supports the allegation that Plaintiff was not free to choose the candidate of his choice without "incurring the wrath and power of the chief." Taking the allegation as true for purposes of this motion to dismiss, Plaintiff's failure to "contribute cash monies to Defendant Trezza" would result in Plaintiff's inability to "proceed up

9

the ranks," a retaliatory penalty.  (*Id.*); *see Ferraioli v. City of Hackensack Police Dep't*, No. 09-2663, 2010 WL 421098, at *1 (D.N.J. Feb. 2, 2010) (holding that plaintiffs' § 1983 claim against Sgt. Trezza survived because plaintiffs "assert[ed] that they were threatened by Sergeant Trezza and Captain Carroll, among others, with adverse employment action if they did not vote for [Chief Zisa's candidate]").

Additionally, Plaintiff sufficiently alleges that Sgt. Trezza had supervisory authority over Plaintiff for purposes of § 1983 for three reasons.  First, Plaintiff alleges that Sgt. Trezza had some managerial control over the department.  (*See* Am. Compl. ¶ 6 ("[Chief Zisa] has enlisted the assistance of other officers within the Department, including defendants Heinemann and Trezza, *to control the department* to meet only his personal goals.") (emphasis added)).  Second, Sgt. Trezza is alleged not to be a mere "line officer."  Instead, Sgt. Trezza is "a Sergeant with the Hackensack Police Department."  (*Id.* ¶ 13); *see Aiellos II*, 2010 WL 421083, at *3 (distinguishing between a mere "line officer" and an officer with supervisory authority such as a sergeant, lieutenant, or captain).  Third, Plaintiff alleges that Chief Zisa's supervisory authority flowed through, among others, Sgt. Trezza.  (*See id.* ¶ 21 ("In order to be treated fairly, Plaintiff and the other police officers had to follow the dictates of Chief Zisa and his associate officers, including . . . Sgt. Trezza.  If the Chief or one of his 'associates' did not like you, you suffered retaliation.")).  Accordingly, Plaintiff's § 1983 claim against Sgt. Trezza survives because Plaintiff has sufficiently alleged that Sgt. Trezza was personally involved in the violations and had supervisory authority over the Plaintiff.

### 3.    Lt. Heinemann

The only specific allegation against Lt. Heinemann relates to Plaintiff's USERRA benefits:

> Nevertheless, Plaintiff attempted to seek proper remuneration.  On or about May 7, 2010, Plaintiff spoke with Supervising Officer, Lt. John Heinemann regarding his receiving what the law requires.
>
> Heinemann told Plaintiff that "I wouldn't push the issue.  It may not end up in your favor.' Heinemann advised Plaintiff that he "should think about it."  Plaintiff was further intimidated by Heinemann who was telling Plaintiff that any further attempts to recover what he was legally owed would result in ramifications to his employment circumstances.

(Am. Compl. ¶¶ 37-38).  Because Plaintiff's § 1983 claims appear to be predicated on Plaintiff's "Constitutional right not to support political positions," (*id.* ¶ 38), and his "freedom to associate with his union by voting for the delegate of his choice," (*id.* ¶ 39), Plaintiff's allegations involving USERRA benefits do not demonstrate Lt. Heinemann's personal involvement in violations of § 1983.[2]  Because the Court finds that the § 1983 claims against Lt. Heinemann did not sufficiently allege his personal involvement, the Court does not address whether Lt. Heinemann had supervisory authority over Plaintiff.   Accordingly, Plaintiff's § 1983 claims against Lt. Heinemann are dismissed without prejudice.

### C.     USERRA Claims

Defendants also seek dismissal of Plaintiff's USERRA claims on the grounds that Plaintiff fails to adequately allege that each of the Defendants was personally involved in violating Plaintiff's rights under USERRA and that the Defendants do not meet the definition of an "employer" under the statute.  (Def. Moving Br. at 14-15).  Plaintiff argues that he "had a

---

[2]  The Court notes that it is difficult to determine from Plaintiff's Amended Complaint whether Plaintiff also predicates his § 1983 violations on his deprivation of rights under USERRA.  Again, Plaintiff's claims are listed in omnibus fashion under the heading "Count One," followed by thirteen separate paragraphs alleging violations of constitutional rights, USERRA, and LAD.  Because the Court finds that Plaintiff's § 1983 claims appear to be cabined to ¶¶ 35-40—before Plaintiff's USERRA allegations in ¶¶ 41-47—the Court will not address whether a claim under § 1983 can be predicated on a violation of USERRA.  The Court notes, however, that Courts that have addressed this issue have held that violations of USERRA cannot serve as predicates for claims under § 1983.  *See Morris-Hayes v. Bd. of Educ.*, 423 F.3d 153, 159 (2d Cir. 2005) ("[W]e hold that USERRA is not a statute for which redress is available against the Individual Defendants under § 1983."); *Garcia v. Ill. State Police*, No. 05-3273, 2006 WL 2191341, at *2 (C.D. Ill. July 31, 2006) (following *Morris-Hayes*); *Satterfield v. Borough of Schuylkill Haven*, 12 F. Supp. 2d 423, 438 (E.D. Pa. 1998) (finding that Plaintiff's USERRA claims subsumed Plaintiff's constitutional claims based on the same set of facts).

duty to obey the orders of . . . Deputy Chief Zisa, Sgt. Trezza and Lt. Heinemann and these defendants can be held individually liable for the violations of plaintiff's rights under USERRA." (Pl. Opp. Br. at 16).  On reply, Defendants argue that "none of these defendants is alleged to have taken any action to interfere with Lopez-Arenas' USERRA benefits," that "speculation that these defendants can potentially he [sic] held liable because they had supervisory authority over Lopez-Arenas is not supported," and that Plaintiff "fails to specify what actions taken by these defendants interfered with his USERRA rights." (Def. Reply Br. at 6-7).  Based on the following analysis, the Court dismisses Plaintiff's USERRA claims against Deputy Zisa, Sgt. Trezza, and Lt. Heinemann.

The purposes of USERRA are to minimize the disadvantages experienced by service members in their civilian careers, to minimize the disruption of the lives of service members when they return to their civilian jobs, to provide prompt reemployment upon return, to prevent discrimination on the basis of an employee's service, and to prevent the deprivation of an employment benefit based on military status.  *See Gordon v. Wawa, Inc.*, 388 F.3d 78, 85 (3d Cir. 2004).  The core statutory provisions of USERRA for purposes of this action are as follows:

> A person who . . . has performed . . . in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that . . . performance of service . . . .

38 U.S.C. § 4311(a);

> An *employer* may not discriminate in employment against or *take any adverse employment action* against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter . . . or (4) has exercised a right provided for in this chapter.

*Id.* § (b) (emphasis added).  "USERRA provisions are construed 'liberally, in favor of the service member.'  This is not surprising because military service ranks as one of the highest forms of

public service a citizen can undertake." *Spadoni v. Easton Area Sch. Dist.*, No. 07-5348, 2009 WL 449108, at *2 (E.D. Pa. Feb. 19, 2009) (quoting *Gordon*, 388 F.3d at 81).

USERRA's plain language requires that a Plaintiff sufficiently plead that a defendant "took [an] adverse employment action" against Plaintiff and that the defendant was an "employer" for purposes of the statute.  *See* 38 U.S.C. § 4311(b).  Because the Court finds that Plaintiff has failed to adequately plead that each Defendant took an adverse employment action against the Plaintiff, the Court takes no view as to whether the allegations satisfy the second requirement, "employer" status.

Plaintiff's general, conclusory, and non-specific allegations against "Defendants" or the "department" are insufficient as to Deputy Zisa, Sgt. Trezza, and Lt. Heinemann to survive Rule 12(b)(6).  Plaintiff makes no USERRA-related allegations against Deputy Zisa specifically, and Plaintiff's allegations against Sgt. Trezza and Lt. Heinemann are too general to plausibly demonstrate that they took an adverse employment action against Plaintiff.  For example, Plaintiff alleges that he "suffered retaliation in the form of the department's refusal to provide him with his compensation and benefits pursuant to USERRA," but allegations against the "department" do not demonstrate that Deputy Zisa, Sgt. Trezza, or Lt. Heinemann took any action that adversely affected Plaintiff.  (*See* Am. Compl. ¶ 23).  Likewise, Plaintiff's allegation that "the Defendants failed to comply with their USERRA obligations and continue[d] to assign Plaintiff to a walking position" does not attribute Plaintiff's demotion to Deputy Zisa, Sgt. Trezza, or Lt. Heinemann; rather, the adverse action is attributed to "Defendants" generally.  (*See id.* ¶ 27; *see also id.* ¶ 30 ("The *Defendants* violated this provision of USERRA [38 U.S.C. § 4316(a)] when they demoted Plaintiff to a walking post following both deployments.") (emphasis added)).  The Court finds that because these conclusory allegations are not supported

by facts demonstrating that Deputy Zisa, Sgt. Trezza, or Lt. Heinemann took an adverse action against Plaintiff, the allegations are too conclusory to satisfy Rule 12(b)(6).

Plaintiff's additional USERRA-related allegations similarly fail to provide adequate factual support that Deputy Zisa, Sgt. Trezza, or Lt. Heinemann took adverse employment actions against Plaintiff.  For example, Plaintiff alleges, "[w]hen Plaintiff attempted to pursue his claims for these [USERRA] benefits and monies, he was retaliated against by Chief Zisa with the assistance of defendants Trezza and Heinemann."  (Am. Compl. ¶ 5).  With this allegation, Plaintiff fails to explain what sort of retaliatory actions were taken by Sgt. Trezza or Lt. Heinemann, and Plaintiff fails to plausibly support this claim of "assistance" with any facts. Plaintiff alleges that he "was also retaliated against for engaging in military activity in violation of USERRA and for demanding the payments and benefits due him under USERRA" when he returned from his service with the National Guard.  (*Id.* ¶ 8).  Although this conclusory allegation targets precisely the type of deprivation prohibited by USERRA, Plaintiff fails to plausibly support it with any facts, and he fails to link the alleged retaliation to any Defendant in particular.  In the core allegation of his Amended Complaint, Plaintiff alleges that "[i]n order to be treated fairly, Plaintiff and the other police officers had to follow the dictates of Chief Zisa and his associate officers, including his brother, Deputy Chief Frank Zisa, Lt. Heineman[n] and Sgt. Trezza.  If the Chief or one of his 'associates' did not like you, you suffered retaliation." (*Id.* ¶ 21).  Although, Plaintiff generally alleges a culture of corruption, Plaintiff fails to explain which "dictates" were issued and by which officer.  Additionally, Plaintiff fails to support this allegation with enough facts even to determine what actions—those protected by USERRA or those protected by another statute listed in Plaintiff's Amended Complaint—led Chief Zisa's "associates" to retaliate.

Plaintiff's allegations in Paragraphs 37 and 38, regarding Lt. Heinemann's warning to Plaintiff—"I wouldn't push the issue [because] [i]t may not end up in your favor." (Am. Compl. ¶ 38)—come closest to satisfying Rule 12(b)(6), but still fail to connect Lt. Heinemann to a particular retaliatory action.   Although Plaintiff connects Lt. Heinemann to a threatening statement, Plaintiff's theory of USERRA liability against Lt. Heinemann *as a result of these threats* remains unclear.  If Plaintiff's theory is that Heinemann followed through on his threats and took some retaliatory action, Plaintiff does not make clear what that action was. Alternatively, if Plaintiff means to infer that Lt. Heinemann's threats led to Plaintiff's demotion to a walking position, (*see id.* ¶¶ 26, 27, 30), then Plaintiff fails to make this allegation affirmatively.  Additionally, Plaintiff alleges that he approached Lt. Heinemann to "seek proper remuneration" *after* being demoted to a walking post for having "voic[ed] his complaints," and therefore it is unclear what type of retaliation Plaintiff experienced as a result of his conversation with Lt. Heinemann.[3]  Therefore, the Court dismisses without prejudice the USERRA claims against Deputy Zisa, Sgt. Trezza, and Lt. Heinemann.

**D.    LAD Claims**

Plaintiff claims that the Defendants violated LAD on similar grounds as those argued under USERRA.   (*See* Am. Compl. ¶ 3 (citing N.J. Stat. § 10:5-12), ¶ 28 ("When Plaintiff returned from his first military deployment, Plaintiff sought to receive those monies, benefits and other rights secured to him per USERRA *and other Statutes*.") (emphasis added), ¶ 43 ("Defendants further violated Plaintiff's rights pursuant to the New Jersey Law Against

---

[3] Because the Court finds that Plaintiff has insufficiently pleaded that Deputy Zisa, Sgt. Trezza, or Lt. Heinemann took an adverse employment action against Plaintiff, the Court does not reach the issue of whether each Defendant was an "employer" for purposes of USERRA.  However, the Court questions whether Plaintiff has sufficiently pleaded that Plaintiff reported to the Defendants, that Plaintiff had a duty to obey their orders, or that Defendants had the power to hire or fire Plaintiff.  *See* 38 U.S.C. § 4303(4)(A) ("[T]he term 'employer' means any person, institution, organization, or other entity that pays salary or wages for work performed or that has control over employment opportunities, including—(i) a person, institution, organization, or other entity to whom the employer has delegated the performance of employment-related responsibilities."); *see also Satterfield*, 12 F. Supp. 2d at 438.

Discrimination in that military service is a protected status category of such law. . . . Defendants violated this law by demoting Plaintiff to a walking assignment and refusing to properly compensate him during his periods of military service.")).  Plaintiff's general theory of liability appears to be that Deputy Zisa, Sgt. Trezza, and Lt. Heinemann aided and abetted in enacting Chief Zisa's discriminatory policies because they "knew or should have known that Plaintiff's rights were being violated yet they did nothing to ensure that the law was followed."  (*Id.* ¶ 42).

Defendants argue that "an allegation that [Defendants] knew of discrimination of another officer and failed to take action only imputes liability to the employer," and therefore "[t]he bare allegation that these defendants knew of alleged discrimination and did nothing about it is legally insufficient to state a claim against them *individually* that they aided and abetted in the discriminatory conduct."  (Def. Moving Br. at 19 (emphasis added)).  Plaintiff contends that the Defendants are individually liable because they aided and abetted in Chief Zisa's discriminatory policies when they "actively participated in the deprivation of [Plaintiff's] rights and . . . had actual knowledge of the fact that his rights were being violated."  On reply, Defendants argue that Plaintiff's Amended Complaint is devoid of allegations demonstrating Defendants' "active and purposeful conduct to support individual liability."  (Def. Reply Br. at 5).

LAD provides essentially the same remedies as those available under USERRA; however, LAD holds individuals liable for their actions in aiding and abetting violations of an individual's rights rather than simply imputing general liability to the employer for the employees' acts.  *See Danna v. Truevance Mgmt., Inc.*, No. 05-5395, 2007 WL 2156361, at *2 (D.N.J. July 25, 2007) (citing N.J. Stat. § 10:5-12(e)) ("[I]t is unlawful discrimination for 'any person, whether an employer or not, to aid, abet, incite, compel, coerce the doing of the acts forbidden under [LAD].").  Aiding and abetting liability under LAD comes in two forms: an

active form, requiring "knowing and substantial assistance," and a passive form, which requires that the employee exhibit a deliberate indifference to harassment in the workplace.  To establish the former—the active—form of aiding and abetting liability, a plaintiff must show that "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation." *Tarr v. Ciasulli*, 853 A.2d 921, 929 (N.J. 2004) (quoting *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 127 (3d Cir. 1999)).

To establish the latter—the passive—form of aiding and abetting liability, a plaintiff mush show that the supervisor holds a duty to act against harassment and yet remains deliberately indifferent to its existence.  *Hurley*, 174 F.3d at 126 ("A supervisor, under New Jersey law, has a duty to act against harassment.  This duty can be violated by deliberate indifference or affirmatively harassing acts.  When a supervisor flouts this duty, he subjects himself and his employer to liability.") (citation omitted); *see also Taylor v. Metzger*, 706 A.2d 685, 691 (N.J. 1998) ("Part of a supervisor's responsibilities is the duty to prevent, avoid, and rectify invidious harassment in the workplace.").  Under such a theory, the employer would remain the principal violator for its failure to prevent or redress the harassing actions of its supervisors.  *Hurley*, 174 F.3d at 129.  However, because the supervisor holds an independent duty to act against harassment, liability would apply under LAD for aiding and abetting the employer's violation.  By demonstrating "deliberate indifference," the employee supervisor "*subjects himself and his employer* to liability." *Id.* at 126; *Coulson v. Town of Kearny*, No. 07-5893, 2010 WL 331347, at *5 (D.N.J. Jan. 19, 2010).

Plaintiff has plausibly pleaded active aiding and abetting liability against Lt. Heinemann based on discouraging Plaintiff from pursuing his statutorily-guaranteed compensation and benefits.  (*See* Am. Compl. ¶ 37-38).  As to element one, Plaintiff alleges that Chief Zisa, the party whom Lt. Heinemann aided, performed a wrongful act that caused Plaintiff's injury.  (*See id.* ¶ 26 ("Plaintiff was reassigned to a walking post, an assignment that is clearly understood as a disciplinary post within the Department.  When plaintiff asked Captain Cinque why he had been demoted in this way, Chief [sic] responded that 'it was the way the Chief wanted it.'"), ¶ 23 (demoting Plaintiff to a walking post following both National Guard deployments)).  As to elements two and three—defendant's general awareness of his role in the alleged activity and defendant's knowing and substantial assistance of the principal violation—Plaintiff's allegations of Lt. Heinemann's discouraging comments satisfy both elements.  Specifically, speaking "with Supervising Officer, Lt. John Heinemann regarding his receiving what the law requires" demonstrates Lt. Heinemann's general awareness of the alleged deprivation.  (*See id.* ¶ 37).  Suggesting that Plaintiff "should think about it" before "push[ing] the issue" demonstrates Lt. Heinemann's general awareness of his role in "intimidate[ing]" Plaintiff.  (*See id.* ¶ 38).  Likewise, "clearly telling Plaintiff that any further attempts to recover what he was legally owed would result in ramifications to his employment circumstances," (*see id.*), if true, demonstrates Lt. Heinemann's knowing and substantial assistance of the principal violation.  *See Hurley*, 174 F.3d at 127.

Plaintiff fails, however, to plausibly plead LAD liability as to Sgt. Trezza or Deputy Zisa under the active or passive theory of aiding and abetting liability.  Presumably, to allege both forms of liability, Plaintiff alleges:

> Defendants did take actions with full knowledge of the rights due and owing Plaintiff, . . . [and] [t]hose in line of succession to Defendant C. Kenneth Zisa,

> including Defendant [Deputy] Frank Zisa . . . and Defendant [Sgt.] Anthony Trezza knew or should have known that Plaintiff's rights were being violated yet they did nothing to ensure that the law was followed.  They breached their duty.

(Am. Compl. ¶ 42).  Plaintiff's statements that "[t]hey breached their duty" and that "Defendants did take actions with full knowledge of the rights due and owning Plaintiff" fail under *Iqbal* and *Twombly* because they are bare allegations and provide no factual support regarding how Defendants "breached their duty," how they had "full knowledge," or what "actions" were taken. Similarly, Plaintiff fails to provide any factual support demonstrating when Deputy Zisa and Sgt. Trezza failed to act despite the fact that they knew or should have known that Plaintiff's rights were being violated.

As such, the Court denies Defendants' motion to dismiss the LAD claims against Lt. Heinemann, and the Court grants Defendants' motion with respect to the LAD claims against Deputy Zisa and Sgt. Trezza with leave to amend.

**E.      SSCRA Claims**

Defendants argue for dismissal on Plaintiff's SSCRA claims on the basis that the statute only applies to employers and provides no private civil remedy against individuals.  (*See* Def. Moving Br. at 15-16).  Plaintiff counters that, "N.J. S[tat. §] 38A:4-4 sets forth no definition of employer and plaintiff has stated a cause of action against the individual defendants for violation of this Act," and that "[n]othing in the Act indicates that these individuals cannot be held liable for violation of the provisions of the statute."  (Pl. Opp. Br. at 18).  Defendants reply that the SSCRA "statutes limit their remedies to benefits that can be provided by the employer; remedies that are not available against individual employees," and that "Lopez-Arenas has not alleged any way in which these defendants violated these acts."  (Def. Reply Br. at 6).  The Court agrees with Defendants that Plaintiff has not adequately alleged a cause of action under SSCRA.

Generally, SSCRA requires that any person who has left a position with an employer in order to perform military service shall be restored to a comparable position upon return.  The statute provides:

> a.  In the case of any person who, in order to perform military service, has left or leaves a position, other than a temporary position, in the employ *of any employer*, and who: (1) Receives a certificate of completion of military service duly executed by an officer of the applicable force of the Armed Forces . . . ; (2) Is still qualified to perform the duties of such position; and (3) Makes application for reemployment within 90 days after he is relieved from such service, if such position was in the employ of a private employer, such employer shall restore such person to such position, or to a position of like seniority, status and pay, unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so.

N.J. Stat. § 38:23c-20(a)(1)-(3) (emphasis added).  SSCRA provides no definition of employer, *see* N.J. Stat. § 38:23C-2, but, as discussed above, USERRA does provide a definition, and the New Jersey legislature contemplated the USERRA definition when it enacted SSCRA.  *See* William S. Greenberg, et al., 47 N.J. Practice, Civil Trial Handbook § 8:3 (5th ed. 2009-2010 & Supp. 2010); Marvin M. Goldstein & Stanley L. Goodman, 18 N.J. Practice, Employment Law § 7A.4-7A.5 (2d ed. 2005-2010 & Supp. 2010).

The Court finds that Plaintiff does not allege whether and how Deputy Zisa, Sgt. Trezza, and Lt. Heinemann are "employers" for purposes of SSCRA.  Indeed, Plaintiff merely references SSCRA in passing, in conclusory fashion.  (*See* Am. Compl. ¶ 3 (providing citations only), ¶ 41 ("Defendants did in whole, in part and/or concert did operate to deny Plaintiff his statutory rights as set forth in 38 U.S.C.S. § 4301 *et seq*., also known as USERRA and N.J. S[tat. §] 38:23c-208 and N.J. S[tat. §] 38A4-4, said violations included but were not limited to his losing monies, pension, vacation time and seniority all of which is prohibited by the language of the above-referenced statutes.").  Additionally, because of the lack of clarity as to the SSCRA allegations in general, it is difficult for the Court to even discern Plaintiff's theory of liability.  For example, it

is unclear whether Plaintiff asserts liability against Deputy Zisa, Sgt. Trezza, and Lt. Heinemann in their individual capacities, as proxies for Chief Zisa, or as proxies for the police department itself.[4]  Therefore, the Court grants Defendant Deputy Zisa, Sgt. Trezza, and Lt. Heinemann's motion to dismiss without prejudice with leave for Plaintiff to amend.

### F.    Punitive Damage Claims Against Chief Zisa

Defendants seek dismissal on the punitive damage claims against Chief Zisa on the basis that the Tort Claims Act precludes such damages against an employee acting in his official capacity. Chief Zisa concedes, however, that punitive damages against him acting in his individual capacity might still apply.  (Def. Reply Br. at 7).  Plaintiffs argue that punitive damages apply in cases where the state official acted with "evil motive or intent" and that the Chief did so in this case.  (*See* Pl. Opp. Br. at 19-20).  The New Jersey Tort Claims Act, N.J. Stat. § 59:9-2, states that "[n]o punitive or exemplary damages shall be awarded against a public entity."  N.J. Stat. § 59:9-2.  Punitive damages, therefore, can only apply to an employee's actions in his individual capacity.  *See Drake v. Andruczyk*, No. 08-4249, 2011 WL 1402158, at *8 (D.N.J. Apr. 13, 2011) (citing *Ramirez v. United States*, 998 F. Supp. 425, 438 (D.N.J. 1998)).  Thus, the Court grants Defendants' motion to dismiss Plaintiff's claims for punitive damages against Chief Zisa in his official capacity.  These claims are dismissed with prejudice.

---

[4] In addition to the insufficiency of Plaintiff's allegations as to the "employer" prong of SSCRA, the Court questions whether Plaintiff has even pleaded the threshold requirements under SSCRA, including a certificate of completion, qualification, and a timely application for reemployment.  *See* N.J. Stat. § 38:23c-20(a)(1)-(3).

III.     **CONCLUSION**

For the reasons set forth above, the Court DENIES Defendants' motion to dismiss the § 1983 claim against Sgt. Trezza and the LAD claim against Lt. Heinemann.  The Court GRANTS Defendants' motion as to all other § 1983 (and § 1985), USERRA, LAD, and SSCRA claims, without prejudice, with leave to amend *within thirty days of the publication of this Opinion* to correct the deficiencies set forth above.  Punitive damages claims against Chief Zisa in his official capacity are dismissed with prejudice.   Additionally, Plaintiff consents to dismissing claims for relief and damages against the HPD, (Pl. Opp. Br. at 18-19), and to striking claims asserted under RICO and the Fifteenth Amendment as alleged in the Amended Complaint.[5]  (*Id.* at 20).  Should Plaintiff choose to amend, for purposes of clarity, the Court requests that Plaintiff separate his claims into multiple causes of action, explicitly addressing all elements of all claims that he chooses to pursue.  An appropriate Order will follow.


s/*Esther Salas*
**Esther Salas, U.S.D.J.**

---

[5] The claims against HPD are dismissed with prejudice because, as Plaintiff concedes, the "Department is not considered an entity separate from the municipality named as a defendant."  (Pl. Opp. Br. at 18).  The RICO and Fifteenth Amendment claims are also dismissed with prejudice "because the statute and Constitutional provision are not relevant to this action."  (*Id.* at 20).